JOSEPH CINQUEGRANO *vs.* T. A. CLARKE MOTORS, INC.

FEBRUARY 27, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

FLYNN, C. J. This is an action in assumpsit to recover money paid by plaintiff on account of the purchase price of a motor truck, delivery of which was rendered illegal by a supervening federal government order. In the superior court jury trial was waived and a decision was rendered for the plaintiff. The case is before us upon defendant's exceptions to that decision and to certain rulings during the trial.

On November 22, 1941 plaintiff agreed to purchase, and defendant to sell and deliver, a new 1942 model Ford truck

equipped with special tires and springs. The agreed price was $1125.69, payable $300 cash, $600.69 to be allowed on a trade-in of plaintiff's Dodge car and the balance of $225 in a thirty day note.

The agreement was made upon a printed form prepared by defendant and contained the following clause: "This order is not binding on dealer until accepted by dealer in writing". The space for the delivery date was left blank but elsewhere the agreement called for plaintiff to "accept delivery of Car or Truck within forty-eight hours after I have been notified that it is ready", and further: "In case I fail to take delivery of Car or Truck when notified, my deposit may be retained as liquidated damages . . . ." Plaintiff's copy of the agreement did not contain the written acceptance of the defendant company but testimony showed that the agreement had been accepted in writing on the date of the order, although plaintiff was not notified thereof until sometime in December.

All negotiations leading to the agreement were conducted by plaintiff with Norman R. Hamilton, hereinafter referred to as Hamilton, who was manager of defendant's used car department and was authorized also to sell and deliver new trucks. He testified that after a contract had been approved by the company, he customarily would make all arrangements concerning delivery and "then tell Mr. Clarke about it afterwards". Thomas A. Clarke, hereafter referred to as Clarke, was the president of defendant company.

By letter dated December 19, 1941, signed by Hamilton, defendant confirmed a previous oral notice that the truck was ready for delivery and called attention to the clause in the contract, permitting its retention of the deposit if delivery was not accepted within forty-eight hours. Pursuant thereto plaintiff, accompanied by his attorney, called at defendant's place of business on December 20 or 21 and asked Clarke if he could cancel his contract. Clarke said he could not and plaintiff was then and there advised by his attorney to complete the contract; but they pointed out

to Clarke that plaintiff had not received defendant's written acceptance of the contract and that the truck was not then equipped with the special tires as agreed. Clarke said the tires were in stock and could be shifted in fifteen or twenty minutes.

In order to remove all questions, however, Clarke wrote the plaintiff on December 22 specifically approving the contract and offering delivery of the truck "with tires, *etc.* as specified in the order." The plaintiff received that letter December 23 but, because of defendant's closing on Christmas, he did not call at its place until December 27. He testified that he had with him his Dodge car and was then ready to complete the transaction, if his request for an extension of delivery date until after New Year's Day was not granted. Hamilton admitted that he agreed that delivery on January 2, 1942 would be all right and he testified that on December 29 he had informed Clarke of what he had done. The latter did not recall this specifically but admittedly neither he nor Hamilton notified plaintiff that such extension of the time for delivery was beyond Hamilton's authority or was in any manner to be countermanded or changed.

On January 2, 1942 the plaintiff went to defendant's place in his Dodge car "to see him about getting the truck" and he testified he was ready to complete the transaction. Both Hamilton and Clarke told him that the truck could not be delivered because of the "freezing order". The terms of such order were not placed in evidence but it was stipulated on the record that "by a legitimate order of the United States Government this truck could not lawfully be delivered after January 1, 1942". Plaintiff, at Clarke's suggestion, later filed an application for a priority but it does not appear that he was successful. The defendant never applied for permission to release the truck from operation of that order.

At no time did Hamilton or Clarke indicate in any way that defendant had elected to exercise its option under the

contract to hold the $300 "as liquidated damages" for any alleged breach by plaintiff. On the contrary, both took the position and stated at the conference on January 2 that the government "freezing order" was the sole reason which then prevented delivery of the truck in accordance with the agreement. Plaintiff's testimony was that he had never refused to accept delivery. Sometime later, in February and again in March, while the freezing order was still in force and no "priority" for delivery had been obtained, the plaintiff demanded his $300 deposit. The defendant refused to return it, and thereupon this action was brought by the plaintiff, and recovery was allowed under the common counts.

The defendant's exceptions numbered 4, 6, 7 and 8 are to rulings admitting or excluding testimony concerning Hamilton's authority to extend the time for delivery of the truck under the contract. Defendant contends, substantially, that the net result of these rulings was to allow Hamilton to testify that he extended the delivery date without showing he had authority so to do, and to prevent defendant from bringing out what was Hamilton's actual authority concerning accepted orders. An examination of the transcript shows that there was some evidence of the scope of Hamilton's apparent authority generally to arrange a delivery date for the customer, following approval of a contract. Hamilton's apparent authority, and not his actual authority as shown by Clarke's specific instructions, which were entirely unknown to the plaintiff, was the material and determinative question here.

In any event, the testimony of Clarke shows, among other things, that he never told the plaintiff that Hamilton lacked such authority. He also testified that the contract was not "washed up"; that he wanted very much to make delivery on January 2; and that he would have done so but was prevented by the freezing order and by that alone. In our opinion, the undisputed evidence of defendant's attitude on January 2 rendered immaterial those questions relating

to Hamilton's actual authority to extend the delivery date, which were involved in the rulings under consideration. Hence the error, if any, in such rulings was not prejudicial and these exceptions are therefore overruled.

The defendant further contends under the fifteenth exception that the trial justice misconceived the law and the evidence in reaching his decision. On the conflicting evidence the trial justice found that the plaintiff had not refused to accept delivery of the truck in accordance with the contract; that Hamilton had apparent authority to extend, and did extend, the delivery date thereunder until after January 1; that Clarke and Hamilton, in effect, had acted toward the contract as being in full force on January 2, 1942, excepting only the effect thereon by this government order; and also that such order had prevented delivery, as called for by the contract, for an unreasonable time. From an examination of the transcript of evidence we cannot say that the trial justice's decision was clearly wrong.

Nor can we agree that he misconceived the law applicable to the facts, as they appeared in evidence, and the findings thereon. The defendant contends, substantially, that the prohibitory order was only a temporary one and that its effect was merely to suspend the terms of the agreement, not to discharge or terminate it, as the trial justice ruled.

In the instant case the sufficient answer to the defendant's contentions, as we understand them, is to be found in certain uncontradicted evidence. It was stipulated on the record that "by a legitimate order of the United States Government this truck could not lawfully be delivered after January 1, 1942". There was no other evidence to alter the sweeping effect of that stipulation. Certainly, the order had not been revoked or relaxed when plaintiff demanded return of his payment, or at the trial; and there was no evidence to suggest the probability that it might be altered at any definite or reasonable time after trial, so as to permit delivery of the truck. For aught that appears in evidence, therefore, the specified delivery under the contract

had been made permanently unlawful by a supervening act or order of the United States government, having the force and effect of law. If this be true, it precludes a conclusion that this order merely prevented delivery during, or that the terms of the contract were merely suspended for, *a temporary* period.

In our opinion, such evidence brings the case within the rule generally recognized that such an executory contract, in the absence of contrary provisions, is terminated if, through no fault of either party, its object becomes wholly illegal and therefore permanently impossible of performance. See 6 Williston on Contracts (Rev. Ed.), § § 1935-1938, § § 1954, 1958, and cases cited; 2 Restatement of the Law on Contracts, § § 457, 458. See also *Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467, 485.

On the other hand, the effect of this prohibitory order in any event made delivery of the truck unlawful for an indefinite and unreasonable length of time, as the trial justice found. Any question of this is removed by the evidence for the defendant. Its president Clarke testified that, even if the prohibition were lifted at the time of plaintiff's demand, or later at the trial, delivery could not be made unless defendant made a "re-appraisal", which in effect would require a different agreement.

Having in mind that this was a purely executory and entire contract, calling for delivery of a specific model of motor truck, the use and market value of which, as a matter of common knowledge in this country, becomes substantially and increasingly affected by the lapse of time; and that the consideration involved another type of automobile, subject also to variations in value, plus a specified amount of cash, the enforcement of such order went to the essence of the contract by affecting its mutuality and consideration. The effect of such order clearly was not to suspend the terms of the express contract entered into by the parties, so that it could be ultimately enforced, but rather to require the

performance of a new and different contract to be imposed upon them by law.

When, as here, a supervening lawful order of domestic government makes performance under an existing contract illegal and the enforcement of such order for an unreasonable time admittedly interferes substantially with the expressed intention of the parties and renders impossible the performance of the terms of the original contract, a party who is not at fault is justified in demanding return of the purchase price he has paid thereunder. In our opinion, the instant case is governed in principle by *DiBiasio* v. *Rose*, 43 R. I. 78. See also *Parker* v. *Macomber*, 17 R. I. 674; *Connell* v. *The Savings Bank of Newport*, 47 R. I. 60, where other types of contracts were considered and similar general principles were apparently applied.

This conclusion makes it unnecessary to discuss the many cases cited by defendant, except to say that they and other cases which were not cited appear to agree that each case must be decided on its own peculiar facts; and that the nature of the contract and its subject matter, the nature of the prohibitory order of domestic government and the effect of its enforcement for an unreasonable length of time, and the circumstances under which the contract was entered into, are all considered, not for the purpose of varying the express executory agreement but for the purpose of explaining or understanding its basis and terms. See *Metropolitan Water Board* v. *Dick, Kerr & Co.*, 2 K. B. 1 (1917), and pertinent cases therein reviewed and cited.

The other exceptions of the defendant being neither briefed nor argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Israel H. Press,* for plaintiff.

*Kirshenbaum & Kirshenbaum,* for defendant.