362 A.2d 143.

BENJAMIN GIM, EX'R OF THE ESTATE OF
TOY SEE CHIN *vs.* JAN CHIN, INC., *et al.*

AUGUST 13, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This is a civil action heard in the Superior Court without a jury to set aside certain transfers of stock and declare a corporate election null and void. A judgment was entered for the plaintiff and the case is before this court on appeal from that judgment.

Jan Chin was the owner of all 300 outstanding shares of Jan Chin, Inc. He died in 1959 and in his will he left all his property to his widow, Toy See Chin. The legal title to the 300 shares vested at that time in Donald A. Delahunt, the executor of the Jan Chin estate. In 1964, Delahunt sold 48 shares back to the corporation in order to pay off debts of the estate. At her request, Delahunt also distributed 85 shares to Toy See Chin, which she then gave to her son, Chin Chak Ping, and two of his children.

On February 1, 1965, defendant, Chin Chak Ping, president of the corporation, called a meeting for the purpose of electing new directors. He and Toy See Chin signed a waiver of notice, but Delahunt was neither notified nor present. At the meeting, Toy See Chin and Chin Chak Ping elected themselves directors and in turn elected Chin Chak Ping to all the corporate offices. In 1966, the corporation then issued a certificate for 167 shares to Toy See Chin. From 1966 to 1970, Toy See Chin endorsed a total of 145 shares back to the corporation and in turn the corporation issued the certificates for the stock in the name of Chin Chak Ping and his wife and children. Delahunt never attended or was notified of any of the meetings during this period of time, did not surrender title to the shares he held as executor, or sign the certificate issued to Toy See Chin in 1966.

Toy See Chin died in 1971. Delahunt assigned his interest in the stock to the executor of Toy See Chin's estate, who now brings this action to cancel the 145 shares, have

the 1965 election declared null and void, and compel a new election of directors.

The trial justice found that Delahunt retained legal title to the 167 shares until the 1971 assignment. He noted that there were claims outstanding against the estate until 1969, that Delahunt as executor never in fact distributed the shares, and that Toy See Chin never attempted to compel distribution of the assets. The trial justice concluded as a matter of law that Toy See Chin could not vote the stock or waive notice of the meeting as merely the beneficial owner and, therefore, that the meeting, the election, and the issuance of the 167 shares to Toy See Chin were invalid. The trial justice also found that Toy See Chin had not transferred the beneficial interest in the stock. He noted that there was evidence that she lacked understanding of business matters, that she had specifically instructed Delahunt to retain legal title to the stock in order to prevent herself from making mistakes, and that she had made all previous transfers through Delahunt. The trial justice concluded that she did not understand the meaning of the purported transfers and thus lacked donative intent. The trial justice then ordered that the stock issued to Chin Chak Ping and his family between 1966 and 1970 be cancelled, that a new corporate election be held on August 1, 1974, and that Chin Chak Ping return all corporate records and property in his control.

## I.

The defendants' first contention is that the trial justice erred in finding that the corporate meeting of February 1, 1965, was invalid. They concede that Donald Delahunt as executor held legal title to the stock. They argue, however, that Toy See Chin as beneficial owner of the stock in question had full power to waive notice of the meeting

and to vote the stock for election of directors. We do not agree.

It is well established that the power to vote follows the legal title to the stock. In the absence of an agreement or statute, the beneficial or equitable owner is not entitled to vote the stock directly. If the beneficial owner objects to the manner in which the legal owner votes the stock, his remedy is limited to whatever action he may have to have legal title transferred, obtain a proxy, sue for damages, etc. *Tracy* v. *Brentwood Village Corp.*, 30 Del.Ch. 296, 59 A.2d 708 (1948); *McLain* v. *Lanova Corp.*, 28 Del.Ch. 176, 39 A.2d 209 (1944); *Flagg-Utica Corp.* v. *Baselice*, 14 Misc.2d 476, 178 N.Y.S.2d 860 (1958); *Salgo* v. *Matthews*, 497 S.W.2d 620 (Tex. Civ. App. 1973); *see* 5 *Fletcher, Private Corporations* §§2035-36 (perm. ed. rev. repl. 1967); Annot., 7 A.L.R.3d 629 (1966).

The defendants rely heavily on the decision of this court in *American Nat'l Bank* v. *Oriental Mills*, 17 R. I. 551, 23 A.795 (1891). In that case, creditors of an insolvent corporation to whom all the corporate property had been assigned brought a petition for the appointment of a receiver, contending that the holders of the legal title of the stock had not been notified of the meeting at which the vote was held to authorize the assignment of the property. The by-laws of the corporation provided that all transfers of stock must be made in person on the transfer books of the corporation. The practice of the company had been to acknowledge stock transfers on the corporate books by writing "cancelled" on the stubs corresponding to the transferred certificates and issuing new certificates to the transferee. The creditors argued that under the by-laws legal title could be passed only if the transferor personally made an entry on the corporate books assigning the stock. The court held that the company practice was sufficient to transfer full title. The court also stated that even if

there had not been a transfer of full legal title, the transferors need not be notified.

> "The holders of the legal title were mere naked trustees for their benefit, having a bare legal title not coupled with an interest, and therefore, if they had been notified and had attended the meeting, they would have been bound to vote in accordance with the wishes of the holders of the beneficial interest." *Id.* at 560, 23 A. at 799.

We believe *Oriental Mills* is a very unusual case and is easily distinguished from the case before us. The transferors in that case had done everything they could, given the practice of the corporation, to pass full title. The transferees even became the record owners of the stock. The flaw, if any, was the barest technicality. Here, however, there has been no attempt to transfer title and Toy See Chin was not the record owner. Furthermore Delahunt is not a mere "naked trustee" as the court in *Oriental Mills* describes the transferors. Until the estate is closed, he has significant duties, not only to the beneficiaries, but also to the creditors of the estate.

## II.

The defendants also claim that the trial justice erred in finding that Toy See Chin did not intend to make a transfer of the beneficial interest in her stock when she endorsed the certificates in question here. Whether she had the donative intent necessary to create a gift is a question of fact, and this court will not upset the findings of the trial justice unless it is shown that he misconceived or overlooked material evidence or that he was clearly wrong. *Chase* v. *Blackstone Dist. Co.,* 110 R. I. 537, 294 A.2d 392 (1972); *Macon* v. *Ciallella,* 106 R. I. 297, 259 A.2d 405 (1969). The defendants fail to specify where the trial justice misconceived or overlooked material evidence or why the findings of the trial justice were clearly wrong. They simply contend that they believe the trial justice

should have drawn a different conclusion from the conflicting evidence. This is not sufficient to sustain an appeal. *Marstan Corp.* v. *Centreville Realty Co.,* 106 R. I. 36, 256 A.2d 26 (1969).

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*William F. McMahon,* for plaintiff.

*Blais, Cunningham, Thayer, Gagnon & Ross, Ernest J. Pratt,* for defendants.