376 A.2d 1379.

SALO LANDSCAPE & CONSTRUCTION CO., INC. *vs.*
LIBERTY ELECTRIC COMPANY.

AUGUST 25, 1977

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

270

JOSLIN, J. The plaintiff in this civil action seeks to recover the fair and reasonable value of certain work and labor performed by it pursuant to a construction subcontract; the defendant counterclaims for an alleged breach of the same contract by the plaintiff. In the Superior Court, a trial justice sitting without a jury found that the defendant owed the plaintiff $26,644.79, entered judgment in the plaintiff's favor for that sum and dismissed the counterclaim. The defendant appealed.

Notwithstanding the many testimonial conflicts, our statement of facts includes, for reasons that will become apparent hereafter, only the undisputed facts and the findings of the trial justice. The record so viewed discloses that on February 23, 1973, the parties entered into a written subcontract whereby plaintiff, for the agreed price of $66,000, promised to fulfill certain of defendant's obligations under the latter's contract with the Commonwealth of Massachusetts for the installation of a highway lighting system in Holyoke, Massachusetts.

Thereafter, but before plaintiff had commenced work on the job, the resident engineer supervising the project for the Commonwealth requested a change in the location of the concrete light pole foundations that plaintiff had contracted to install. The additional work involved in accomplishing that change would have required plaintiff to rent equipment and to employ additional skilled laborers — costs not

contemplated in the original subcontract. The plaintiff advised that it was prepared to do the extra work, but at a substantial additional charge. The defendant found the proposed price revision too high, and as a result the parties agreed that defendant would contract elsewhere for the installation of the concrete foundations; that plaintiff would do all the work required under the original subcontracts except for the installation of those foundations; that defendant would supply plaintiff with all materials necessary to perform the job; that the contract price would be reduced from $66,000 to $24,000, payable biweekly on plaintiff's submission of invoices showing the work done; and that defendant would incorporate the revised agreement in a new writing. When neither the new written contract nor the progress payments were forthcoming, plaintiff, which had started work on the job in June, left it in early August without having completed it.

Based on the foregoing, the trial justice found that defendant had breached the terms of the new agreement and that the $26,644.79 claimed by plaintiff was a fair and reasonable amount for the work and labor performed by it.

Although defendant advances several contentions, at the root of each is its recurring insistence witnesses were more credible than plaintiff's and therefore should have been believed by the trial justice. That argument should have been, and undoubtedly was, made at the trial level, where it was unsuccessful. To succeed with it here, defendant cannot merely repeat what it argued in the trial court; rather, it must show that in resolving the testimonial conflicts in plaintiff's favor, the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. *Gim v. Jan Chin, Inc.*, 117 R.I. 39, 43-44, 362 A.2d 143, 146 (1976); *Silvia v. Wicks*, 116 R.I. 545, 547-48, 369 A.2d 33, 34 (1976); *Caldarone v. State*, 98 R.I. 7, 13, 199 A.2d 303, 306-07 (1964). The defendant has failed to satisfy that obligation, and it is for this reason that we have accepted

the trial justice's findings of fact and have drawn upon them for our statement of facts.

Given that statement of facts, it is evident that in this case the parties completely discharged their obligations under the original contract by substituting therefor a new agreement which changed, not only the work to be performed by one party, but also the price to be paid by the other.[1] *See* 6 Corbin, *Contracts* §1293 (1962). Courts have frequently described such a substituted contract as one kind of accord and satisfaction. *E.g., In re Kellett Aircraft Corp.*, 77 F. Supp. 959, 962-63 (E.D. Pa. 1948), *aff'd*, 173 F.2d 689 (3d Cir. 1949); *Babcock* v. *Huntoon*, 37 R.I. 526, 534-36, 93 A. 911, 914-15 (1915). Professor Corbin approves of this terminology, even though there are many instances of accord and satisfaction that are not substituted contracts, "because the agreement instantly operates as satisfaction and discharge." 6 Corbin, *supra*, §1293 at 189. A substituted contract is also a rescission if, as here, the former claim was itself of a contractual character, unless the meaning of the term "rescission" is restricted to a mutual agreement of total discharge without any new contract. *Id.* at 190.

Thus, it matters not whether we refer to this transaction as an accord and satisfaction or as a rescission followed by the formation of a new contract; the significant and essential element in either instance under the substituted contract theory is a factual determination that the original contractual rights and obligations of both parties were extinguished and new contractual rights and liabilities created for each, all by their mutual agreement. *See Priest* v.

---

[1] The present situation should not be confused with the exception to the preexisting duty rule set out in §89D(a) of the Restatement (Second) *Contracts* (Tent. Drafts Nos. 1-7, rev. & edited 1973) and adopted by this court in *Angel* v. *Murray*, 113 R.I. 482, 322 A.2d 630 (1974). Under that exception, a modification of a contractual duty may be enforced even though one of the parties only does or promises to do something that he is legally obligated to do or refrains or promises to refrain from doing something that he is not legally privileged to do.

*Oehler,* 328 Mo. 590, 602-03, 41 S.W.2d 783, 788 (1931).[2] The trial justice found as a fact that this essential element existed in this case, and we believe that he was correct.

There remains only the question of the proper measure of plaintiff's recovery for the work done. The theory urged by plaintiff and adopted by the trial justice is that defendant's failure to make the agreed-upon progress payments constituted a total breach of the substituted contract and entitled plaintiff to recover the reasonable value of the work performed rather than damages based on the contract price. In support of its claim under that theory, plaintiff presented testimony that the fair and reasonable value of the performance rendered was $26,644.79. The defendant, on the other hand, argues that plaintiff had agreed in its subcontract that its compensation was to be based upon the unit price schedule stipulated in defendant's contract with the Commonwealth and that its damages should therefore be limited to a sum arrived at by multiplying the units of work completed by the prices stipulated therefor. That sum, according to defendant, is only $14,436.87.

The defendant's theory falls short and plaintiff's hits the mark, however, for an owner or prime contractor who fails to pay an installment due on a construction contract is guilty of a breach that goes to the essence of the contract and that entitles the injured party to bring an action based on a quantum meruit theory for the fair and reasonable value of

---

[2]Although we have referred to the transaction as an "accord and satisfaction" or a "rescission," the trial justice described it as an "abandonment" and the defendant as a "novation." An "abandonment," however, is the unilateral act of one party in refusing to perform his part of an agreement. *Jakober* v. *E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 112, 265 A.2d 429, 434 (1970. Professor Corbin, in discussing the use of the term "novation" in the context of this kind of case, says:

"All novations are substituted contracts; and the converse is also true that all substituted contracts are novations, unless we follow the more usual custom of using the term 'novation' only in cases where the substituted contract involves a substituted debtor or creditor as a new party. The term 'substituted contract' is more likely to be used where there are no new parties; and the term 'novation' where a new party is involved." 6 Corbin, *Contracts* §1293 at 189-90 (1962).

the work done. *Pelletier* v. *Masse*, 49 R.I. 408, 410-11, 143 A. 609, 610 (1928); *Green & Brown* v. *Haley*, 5 R.I. 260, 262 (1858); Restatement, *Contracts* §347 (1932); 5 Corbin, *supra*, §1109. The plaintiff in this case has brought such an action; and defendant, having offered no evidence suggesting that plaintiff's claim is not a fair and reasonable charge for the work done, has given us no reason for disturbing the trial justice's acceptance of that claim.

There is one item of the plaintiff's claim, however, with respect to which the trial justice appears to have overlooked material evidence. The plaintiff's invoices to the defendant included a charge of $3,149 for the rental of a machine called a gradall, which the plaintiff had been required to lease in order to perform certain excavation tasks under the contract. The undisputed testimony, however, is that this charge was paid by the defendant directly to the lessor of the gradall. The trial justice's award must therefore be reduced by this amount.

The defendant's appeal is sustained in part and denied and dismissed in part; the judgment appealed from is modified by reducing the amount thereof to $23,495.79, plus interest and costs, and as so modified is affirmed; and the case is remitted to the Superior Court for further proceedings.

MR. JUSTICE PAOLINO did not participate.

*Kirshenbaum Law Offices, Inc., Sanford M. Kirshenbaum, Esq.*, for plaintiff.

*Adler, Pollock & Sheehan, Incorporated, Peter Lawson Kennedy*, for defendant.