Louis A. IANNUCCILLO

v.

MATERIAL SAND AND STONE
CORPORATION et al.

No. 96–453–Appeal.

Supreme Court of Rhode Island.

May 15, 1998.

Robert P. Corrigan, James T. McCormick, Providence, for Plaintiff.

Lauren E. Jones, Robert Smith Thurston, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

**WEISBERGER, Chief Justice.**

This case comes before us on cross-appeals from a judgment entered in Superior Court following a jury waived trial. The plaintiff, Louis A. Iannuccillo (Iannuccillo), sued, claiming money damages for the defendants' alleged breach of contract and negligence arising out of excavation work the defendants performed on property owned by the plaintiff at the corner of Waterman Avenue and Donovan Court (the property or site) in the town of North Providence, Rhode Island. The defendants filed a counterclaim, alleging that Iannuccillo had breached the contract by failing to pay for certain blasting expenses. The facts and travel of the case insofar as are pertinent to our determination of the instant appeals are as follows.

In 1985 plaintiff entered into a written contract with defendant Material Sand and Stone Corporation (Material), whereby Material was to excavate the 127,000–square–foot lot from its then-existing sloped state to "grade from curbline elevation to an elevation 2 feet higher at the rear of the property." Leonard Pezza (Leonard), defendant C. Pezza & Son, Inc.'s (Pezza) principal, had a working relationship with plaintiff. Pezza was an excavation and on-site-preparation contractor. The defendant Robert Pezza is the son of Leonard and president of Material, an earth-processing company.

In 1985 Leonard and Iannuccillo met at the property to discuss the proposed excavation job. The essential terms of their agreement were thereafter reduced to a written agreement dated July 22, 1985. Although the written contract was entered into between Material (Robert Pezza's signature appears on the writing) and Iannuccillo, the parties agreed, as the trial justice recognized, that Pezza would actually perform the excavation. The parties estimated that said excavation would entail the removal of approximately fifty to sixty-thousand cubic

yards of gravel and "existing rock now exposed." Under the terms of the contract Pezza was to deliver ten thousand cubic yards to another site owned by Iannuccillo (the 246A site), with the remainder of the excavated stone delivered to Material, which would process it and sell it. Testimony at trial established that at that time the fair market value for gravel was $1 per cubic yard. Iannuccillo's expectation under the contract was that he would end up with a lot which would be suitable to build and defendant would benefit from the proceeds realized from the processing and sale of the gravel—expected to amount to approximately forty to fifty-thousand cubic yards. The parties agreed that "[t]he cost of blasting [would] be shared by Material Sand and Stone Corporation and Louis Iannuccillo at a price of $5,000 each"; this was to have been the only money to change hands under the terms of the written contract.

Located at the rear of the subject property, which prior to the excavation stood approximately 40 feet higher than curb elevation on Waterman Avenue, was a residential housing development. At the time the contract was entered into, plaintiff had no engineering plans for the excavation, but he testified that he intended to leave a "20–foot buffer" along the boundary bordering the residential development (eastern boundary). Leonard testified that Iannuccillo never instructed him specifically about a buffer. He testified that he intended to slope the resulting embankment to provide an appropriate buffer between the residential development and plaintiff's excavated building site.

During the spring of 1986 residents along the eastern boundary complained to officials of the town, who in turn intervened, claiming that the excavation of Iannuccillo's property was illegal. North Providence officials were concerned with plaintiff's plans, or lack thereof, in regard to the condition in which the embankment at the eastern boundary would be left after the excavation was completed. On May 9, 1986, the planning director for the town of North Providence sent plaintiff a letter, stating that he was in violation of a zoning ordinance for removing gravel from the site without the approval of the zoning board. Pezza was allowed to continue the excavation in reliance on plaintiff's promise to provide the town with an appropriate plan documenting plaintiff's intended result. When plaintiff failed to deliver a plan to the town, the planning director shut the project down on or about June 3, 1986. The town also installed a 500–foot fence along the eastern boundary of the property, the slope of which apparently was growing ever more precipitous with the removal of each shovel full of earth. The town billed Iannuccillo $6,920 for the cost of the fence.

While plaintiff and town officials were embroiled over plaintiff's lack of preparation for the excavation, further troubles were beginning to surface between Pezza and Iannuccillo. Pezza had brought in a blasting contractor to break up some of the larger exposed boulders as contemplated in the parties' agreement. Upon completion of this blasting, approximately 10,000 cubic yards of ledge were discovered. The ledge was located in both the flat area of the site and the embankment or slope area. Iannuccillo instructed Pezza to work around the newly exposed ledge but failed to forward his half of the accrued blasting costs to Pezza. Iannuccillo then shifted his position in respect to the ledge, asserting that defendant was obligated to remove the ledge as part of their contract. The defendant, of course, maintained that ledge removal was not part of the bargain, but plaintiff refused to negotiate any further.

With the job indefinitely on hold, Iannuccillo hired an engineering firm, R.F. Geisser & Assoc. Inc. (Geisser), to develop a final plan that would be satisfactory to the town. Geisser determined that the embankment along the eastern boundary was unstable and formulated a plan for remedial work to shore up the embankment. The plan for remedial work was completed and forwarded to Iannuccillo on or about October 29, 1986.

In January 1989 plaintiff sued Pezza, Material, and Robert Pezza, claiming that defendants had breached the contract and negligently performed the excavation, which undermined the lateral support to the adjacent residential property, requiring the erection of the 500–foot fence and the reme-

dial engineering work pursuant to the Geisser plan. The defendants counterclaimed, seeking damages for Iannuccillo's failure to pay his half of the blasting costs incurred by Pezza as agreed in the written contract.

The property lay untouched from June 1986 until 1993 when, while the instant suit was pending, Iannuccillo hired R. DiCenzo Trucking (DiCenzo) to blast the ledge, excavate it, and complete the site development by resloping the eastern boundary according to the Geisser plan. DiCenzo charged plaintiff a total of $80,000 of which DiCenzo paid $32,000 directly to a third-party blasting contractor. DiCenzo testified that 60 percent of the work he performed was the hauling away of the blasted ledge material and that after the ledge had been cleared, it was necessary for him to reslope approximately 60 percent of the embankment.

The case was tried without a jury in May 1996.[1] In rendering his decision from the bench, the trial justice found that the ledge was not contemplated when the parties originally bargained and that, therefore, defendants could not be held liable for its removal. Accordingly the trial justice determined that the cost of blasting and removing the ledge had to be borne by Iannuccillo. The trial justice did award plaintiff damages, however, finding that Pezza had breached the contract, having failed to tender substantial performance thereunder. The trial justice awarded plaintiff $48,000 (plus interest in the amount of $56,053.47, for a total of $104,053.47), the cost incurred by plaintiff to have DiCenzo complete the job less the cost of blasting the ledge. The trial justice awarded Pezza $2,802 on its counterclaim, finding that amount to be half of defendants' actual blasting costs.

The defendants raise several issues on appeal that they claim merit reversal of the trial court's determination of liability and award of damages: (1) further performance pursuant to the contract was excused under the companion doctrines of impossibility or impracticability because of the discovery of the ledge and/or the intervention of the town in ordering Pezza to cease work at the property; (2) plaintiff's failure to pay his half of the blasting costs incurred by Pezza amounted to a material breach of the contract and thus excused Pezza's further performance; (3) the trial justice erred by awarding to plaintiff excessive damages that were unsupported by the facts as found by the trial justice, and (4) the trial justice erred in concluding that defendants negligently undermined the lateral support along the eastern boundary. Iannuccillo advances two challenges to the trial justice's decision. Specifically plaintiff contends that the trial justice erred (1) in granting judgment to defendants on their counterclaim after the court's finding that defendants had failed substantially to perform the contract and (2) that the trial justice erred by denying plaintiff's claim for unjust enrichment. Additional facts necessary to our development of these issues will be supplied.

### Standard of Review

We begin our sift through the rubble of this dispute by noting the standard of review applicable to the findings made by the trial justice below. When a trial justice renders a decision without the intervention of a jury, our review of his or her findings is highly deferential. *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996). A factual finding will not be set aside unless an appellant can show that the trial justice overlooked or misconceived material evidence or such findings are otherwise clearly wrong. *See Serzen v. Director of the Department of Environmental Management,* 692 A.2d 671, 675 (R.I.1997); *Lisi v. Marra,* 424 A.2d 1052, 1055 (R.I.1981).

### Defendants' Appeal

The defendants claim that the trial justice erred in concluding that they breached the contract with Iannuccillo in that further performance was excused under the companion doctrines of impossibility and/or impracticability.

---

1. Judgment as a matter of law was entered in favor of defendant Robert Pezza individually, the trial justice having concluded that he was not personally liable on the facts of the case and that even though he was the signatory on the written portion of the Iannuccillo–Material contract, the "clear intent of that agreement was to bind the corporation [Material], not the individual."

Pezza argues that its performance was rendered impossible by operation of law when the town halted work at Iannuccillo's property in June 1986. Pezza reasons that the town's action, together with Iannuccillo's subsequent failure to respond in a timely fashion to the town's work-plan directive, prevented it from performing fully under the contract. *See, e.g., City of Warwick v. Boeng Corp.*, 472 A.2d 1214, 1219 (R.I.1984) (performance excused when purpose underlying the contract is "totally and unforeseeably destroyed"); *Cinquegrano v. T.A. Clarke Motors Inc.*, 69 R.I. 28, 34–35, 30 A.2d 859, 862 (1943) (explaining that performance under executory contract may be excused where its object becomes illegal and therefor permanently impossible of performance).

█ We are of the opinion that any frustration of Pezza's performance caused by the work stoppage was temporary in nature. Pezza testified that with the town's permission he continued to grade and haul material away from the property into June 1986, after the town had notified plaintiff that the work must halt until appropriate plans were approved by the town's zoning board. By letter dated August 8, 1986, the town informed Iannuccillo that he could have his contractor resume work at the site to "stabilize the bank." In turn plaintiff notified Pezza, by letter dated August 9, 1986, that work could resume and that it "must be done as soon as possible."

Thus defendants' impossibility argument, though not completely devoid of merit when considered in the context of the other difficulties associated with the job, does not support the extent of relief Pezza seeks—complete absolution of responsibility under the contract.

The defendants fare better in their related argument that the discovery of the ledge made impracticable any further performance on its part pursuant to the terms of the agreement. The central focus of the instant dispute, as the trial justice correctly recognized, was the discovery of the ledge and the resulting communication breakdown between Pezza and Iannuccillo. The trial justice found that plaintiff, despite the lifting of the work ban by the town, remained intransigent

in his refusal to renegotiate the contract with Pezza. Leonard testified that he told plaintiff that "we can work this out * * * because I'll take this rock back to the plant * * *. It could be worked out." According to Leonard, plaintiff resisted this offer: "No * * * your $5,000 that I've got to pay you has to include [blasting the ledge]." Had the parties renegotiated, Pezza could have completed its excavation and grading of the property. Additional labor costs necessitated by the increased amount of material to be removed would have been offset by the increase in profit realized from the processing and sale of the rubble. Pezza argues that this unexpected discovery coupled with Iannuccillo's intransigence in failing to renegotiate the terms of the contract, as indeed the trial justice concluded was incumbent upon him, forever extinguished its obligation under the contract.

█ A party's performance under a contract is rendered impracticable upon the occurrence of an event or a manifestation of a circumstance the nonoccurrence of which was a basic assumption on which the contract was made. *See* 2 Restatement (Second) Contracts § 261 (1981); *see, e.g.*, G.L.1956 § 6A–2–615; 18 Samuel Williston, *Contracts* § 1963 (3d ed.1978) (explaining that rationale for the doctrine of impracticability is that the circumstance causing the breach has made performance so vitally different from what was *anticipated* that the contract no longer governs). In *Downing v. Stiles*, 635 P.2d 808, 815 (Wyo.1981), the court discussed succinctly the requisite elements to a finding of frustration or impracticability upon the occurrence of a supervening event: (1) the contract is partially executory, (2) a supervening event occurred after the contract was made, (3) the nonoccurrence of the event was a basic assumption on which the contract was made, (4) the occurrence frustrated the parties' principal purpose for the contract, (5) the frustration was substantial.

The trial justice's findings support defendants' assertion of impracticability. First, he found that the contract was executory, providing for removal of gravel and sand until the desired grade was achieved, which never occurred because of the discovery of the

ledge. Second, the trial justice found that the discovery of the ledge was a "condition not anticipated by the parties to this contract." Third, the nonexistence of the ledge was a basic assumption of the parties. This fact is borne out by the parties' contemplation of sharing the incidental costs of blasting, estimated in their written agreement to be approximately $10,000. As it turned out, the total cost of blasting alone was closer to $40,000 (the $5,604 expended by Pezza combined with the $32,000 DiCenzo paid to have the ledge blasted). Moreover, the express terms of the contract only obligated Pezza to remove "existing rock *now exposed.*" (Emphasis added.) Fourth, the essential purpose of the contract—to remove sand and gravel from the lot and achieve an even grade in anticipation of building—was frustrated by the discovery of the ledge. Finally, it can be fairly said that the frustration was substantial—Iannuccillo eventually paid DiCenzo $80,000 to complete the excavation work, $32,000 of which went to the cost of blasting the ledge. In addition, DiCenzo testified that 60 percent of his labor entailed the removal of the ledge material. Sixty percent of the $48,000 DiCenzo realized from the excavation of the site amounted to $28,800. Therefore, approximately $60,800 ($32,000 plus $28,800) was the additional cost the ledge imposed upon the excavation of plaintiff's property.

We have said that a contract's performance will not be set aside merely because the performance under the contract becomes more difficult or expensive than originally anticipated. In *Grady v. Grady*, 504 A.2d 444, 447 (R.I.1986), we explained that the "ultimate inquiry * * * for the purposes of accepting or rejecting a defense of impossibility is whether the intervening changes in circumstances were so unforeseeable that the risk of increased difficulty or expense should not be properly borne by [the party who declined to complete performance]." Arguably both parties to this contract were possessed of considerable knowledge, experience and sophistication regarding excavation and building-site preparation. Consequently the existence of ledge in an excavation of this size was not completely beyond the realm of foreseeable occurrences. In the case before

us, however, the parties inserted an express term into the contract limiting Pezza's obligation, and a fortiori his liability, to the removal of "existing rock now exposed." *See* 2 Restatement (Second) *Contracts* at § 261 (comment c); *see also Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 991–92 (5th Cir.1976) (discussing impracticability defense when occurrences were foreseeable but parties to contract inserted express term into contract to protect against liability).

■ Applying these principles to the facts before us compels a finding in favor of Pezza. Clearly the ledge was neither exposed at the time the parties entered into the contract nor anticipated. Its discovery altered substantially the complexity, difficulty and expense necessary to achieve the desired result. Accordingly we hold that the discovery of the ledge so increased the burden upon defendant Pezza that further performance pursuant to the terms of the contract was rendered impracticable. Indeed the trial justice concluded as much. The "breaking up the ledge and obtaining the level, must fall upon the plaintiff * * *. [The plaintiff] had no contractual rights to tell this defendant to remove the ledge * * * the ledge * * * was not contemplated by any agreement between the parties. Mr. Pezza was not out of line, demanding that some agreement had to be struck concerning the ledge before he could complete his work."

The defendants claim that the trial justice erred in awarding Iannuccillo any damages on the contract both because Pezza's performance was excused by impracticability and in the alternative because Iannuccillo's failure to pay his half of the blasting costs amounted to a material breach entitling Pezza to forgo further performance. In support thereof defendants rely on *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.*, 122 R.I. 861, 413 A.2d 85 (1980), and *Salo Landscape & Construction Co. v. Liberty Electric Co.*, 119 R.I. 269, 376 A.2d 1379 (1977). In those cases we held that the failure of a party to pay installment payments on a construction contract is a material breach of the contract and excuses further performance by the nonbreaching

party. *Aiello Construction, Inc.,* 413 A.2d at 87; *Salo Landscape & Construction Co.,* 119 R.I. at 274–75, 376 A.2d at 1382. We explained that the nonbreaching party may then bring an action for the fair and reasonable value of the work done. *Aiello Construction, Inc.,* 413 A.2d at 87.

In the instant case, of course, there is no basis for defendants to pursue damages under a theory of quantum meruit because defendants realized the fair and reasonable value of their services in direct proportion to the amount of sand and gravel removed from the site.

 Whereas Pezza realized the full value of the contract (approximately 50,000 cubic yards of gravel for processing by Material), we are of the opinion that plaintiff did not. Therefore, the trial justice did not err in finding that Iannuccillo was entitled to recompense for that portion of the work subsequently performed by DiCenzo that Pezza was originally obligated to perform. However, we agree with defendants' contention that the sum awarded by the trial justice was disproportionate to the amount of work DiCenzo devoted to stabilizing and resloping the eastern boundary embankment—work that but for the discovery of the ledge would have been completed by Pezza. It appears from the record that the trial justice did not attempt to make the necessary findings of fact regarding what percentage of the cost of DiCenzo's labor applied to the work Pezza was unable to complete owing to the discovery of the ledge, the intervention of the town, and Iannuccillo's unwillingness to renegotiate the contract. Apparently the trial justice merely subtracted the $32,000 DiCenzo paid the blasting contractor from the $80,000 DiCenzo collected from plaintiff. This calculation failed to consider the percentage figure of the remaining $48,000 attributable to removing or hauling the ledge material, the cost of which the trial justice had previously determined Pezza not to be responsible. Accordingly the award of damages must be vacated and remanded for further findings by the trial justice. In making this determination on remand, the trial justice may adduce additional evidence as necessary in arriving at an amount that accurately represents only that portion of DiCenzo's labor devoted to stabilizing and resloping the eastern boundary embankment. Such costs will be the only damages to which plaintiff is entitled.

The defendants next contend that the trial justice erred in concluding that Pezza negligently undermined the lateral support for the land adjoining plaintiff's property on the eastern boundary. We need not reach the question of negligence since we have determined that plaintiff is entitled to damages for the cost of stabilizing and resloping the eastern boundary embankment. Whether this entitlement is based upon negligence or breach of contract is of no consequence to the outcome. Whatever the theory of recovery, plaintiff is not permitted to collect twice for essentially the same injury.

### Plaintiff's Appeal

 Iannuccillo challenges the trial justice's decision awarding damages to Pezza on its counterclaim for half of the blasting costs. Under *National Chain Co. v. Campbell,* 487 A.2d 132 (R.I.1985), only when a builder/contractor has substantially performed may he or she recover the contract price "less the amount needed by the owner to remedy the defect." *Id.* at 135 (citing *Ferris v. Mann,* 99 R.I. 630, 636, 210 A.2d 121, 124 (1965)). The trial justice found that defendants had failed substantially to perform the contract but expressly found that "the general rule does not apply in this case." Further he found that the discovery of the ledge was a "development that required the parties to renegotiate * * * I don't believe that it was unreasonable at all on behalf of the defendants to bring [the ledge] to the attention of the plaintiff that a situation existed which affected the ability of the *parties* to receive the benefit of their agreement." (Emphasis added.)

 It is undisputed that until the ledge was discovered and the town shut down the work site, Pezza had performed according to the terms of the contract. Even after the ledge was revealed, Pezza continued to work around it at Iannuccillo's behest. The testimony at trial clearly established that when Pezza left the work site for good in early

June 1986, the accessible "rock now exposed" had been cleared from the property. The evidence amply supports the trial justice's decision to forgo strict adherence to the general rule and award Pezza damages. Accordingly Iannuccillo's finding of fault with the trial justice's thoughtfully considered decision on this issue is without merit.

Last, Iannuccillo insists that if we determine that the defendants' performance was discharged or excused because of impossibility or impracticability, then we in turn must award him restitution so as to avoid injustice between the parties. We disagree. As discussed above, the trial justice found that prior to the discovery of the ledge the plaintiff received the benefit of the defendants' labor performed upon his property. The benefits realized by one party were in direct proportion to the benefit conferred on the other. As the trial justice recognized, "I have no doubt that the plaintiff wanted to get his lot leveled without expending any additional funds * * *. The [plaintiff's] agreement, with these corporate defendants, was a most advantageous agreement." Clearly Iannuccillo benefited from the removal of approximately 60,000 cubic yards of gravel from his building site (10,000 cubic yards of which were transported to the plaintiff's 246A site). That the final grade initially contemplated by the parties could not be realized according to the terms of the contract was solely the result of the discovery of the ledge and subsequent stalemate of the parties. We are confident that after the trial justice awards to the plaintiff the correctly calculated amount of damages (equal to the cost of DiCenzo's labor to reslope the embankment) the plaintiff will be made whole.

For the foregoing reasons the plaintiff's appeal is denied and dismissed. The defendants' appeal is sustained. The trial justice's award of damages to the plaintiff in the amount of $48,000 is vacated, and the case is remanded to the Superior Court for the limited purpose of making further findings of fact consistent with this opinion and to enter an amended judgment accordingly.