USCA1 Opinion

 

 May 13, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2302 PATRICIA L. LeFEVRE, Plaintiff, Appellant, v. JESSE BROWN, SECRETARY OF THE DEPARTMENT OF VETERANS' AFFAIRS, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Lynch, Circuit Judges. ______________ ____________________ Gregory P. Piccirilli with whom Sciacca & Piccirilli was on brief _____________________ _____________________ for appellant. Sheldon Whitehouse for the United States. __________________ ____________________ ____________________ Per Curiam. After exhausting her administrative ___________ remedies, Patricia LeFevre filed suit in the district court seeking damages and injunctive relief against her employer, the United States Department of Veterans' Affairs, for alleged gender discrimination in violation of Title VII. 42 U.S.C. 2000e-16(c). She claimed that she was initially denied relocation benefits provided to comparably situated male employees, and that when she complained to her supervisor she was assigned to a lesser position at another office. An additional claim of age discrimination, 29 U.S.C. 633a(c), was withdrawn at trial and is no longer at issue.   LeFevre presented her claims of gender discrimination and retaliation to a jury in October 1995. At the close of LeFevre's evidence, the district judge in an opinion from the bench granted judgment as a matter of law in favor of the government on the gender discrimination and retaliation claims. Fed. R. Civ. P. 50(a). This appeal followed. The only issue on appeal is whether the evidence, taken in the light most favorable to LeFevre, would permit a reasonable jury to decide in her favor, and our review on that issue is de novo. Gibson v. City of Cranston, 37 F.3d 731, 735 (1st ________ ______ _________________ Cir. 1994). To summarize the evidence, LeFevre was working for the Veterans' Administration in Texas in early 1990. In March -2- -2- 1990, she applied for an advertised management position with a VA office in Providence, Rhode Island. The VA's internal form authorizing the position specified that no relocation expenses were authorized; but this restriction was not mentioned in the advertisement itself. At trial, LeFevre testified that during an interview for the job with the Providence Regional Manager Clyde Waite, Waite told her that she would be paid for the expense of moving her household goods. Waite testified he told LeFevre that no relocation benefits were available but that he later told her that he might be able to get reimbursement for moving her household goods, which in fact he did.  After LeFevre began working in Providence, she learned that two men hired for similar positions had received further benefits such as reimbursement for lodging and mileage expenses, a per diem allowance, and a home equity purchase. LeFevre told Waite that she believed she was entitled to these benefits, but Waite again said that no further benefits were available. LeFevre complained to her congressman and thereafter a VA official in Washington ruled that the denial of benefits was due to a misinterpretation of government regulations and that LeFevre was entitled to full reimbursement. LeFevre eventually was paid over $61,000 for expenses relating to her move.  -3- -3- Shortly after LeFevre told Waite that she was contacting her congressman, LeFevre was transferred from Providence to Cranston, R.I, to another VA position, apparently one with no management responsibility. LeFevre contended that Waite's motive was to retaliate against her because of her complaints. Waite testified that the transfer stemmed from an ongoing appraisal of LeFevre's position and job performance that had begun long before she raised the issue of relocation expenses.  Against this background, we agree with the district court that LeFevre did not present evidence permitting a reasonable jury to conclude that gender bias caused the original alleged disparity in treatment as to relocation expenses. LeFevre's burden was defined by McDonnell Douglas _________________ Corp. v. Green, 411 U.S. 792 (1973). There was no specific _____ _____ evidence of discriminatory intent, but to establish a prima _____ facie case it was enough for LeFevre to show that she was a _____ woman and that men, apparently similarly situated, were given more favorable treatment. Id. at 802. This LeFevre did.  ___ But it was then open to the defense to respond by showing a non-discriminatory reason for the action. 411 U.S. at 802-03. The government did this by introducing into evidence the VA's "request for personnel action"; this form, authorizing the advertising of the position, explicitly stated that "no relocation expenses are authorized." Waite -4- -4- testified that this document was prepared before the VA had any notion whether the successful applicant would be a man or woman. On its face, the document provides a reason for the decision to deny relocation benefits that was not gender based.  We are now told that because LeFevre was relocated for the convenience of the government, she could not rightfully be denied relocation benefits. But it does not matter that the government's original reason for denying benefits (lack of authorization) was based on a misunderstanding of the regulations; under Title VII the employer has a right to be wrong so long as the decision was not tainted by discrimination. Pollard v. Rea Magnet Wire Co., 824 F.2d _______ ____________________ 557, 559 (7th Cir.) ("reasons honestly described but poorly founded" represent bad judgment, not pretext), cert. denied, ____________ 484 U.S. 977 (1987). LeFevre was entitled to offer evidence that the government's explanation was pretext, for example, that the explanation had been made up after the fact. LeFevre did not object at trial to the authenticity of the document, but she does offer on appeal a host of arguments to suggest that neither the document nor Waite's testimony about it was reliable. She points out, for instance, that while the authorizing document purportedly denied relocation benefits, -5- -5- the public advertisement said nothing about relocation benefits one way or the other. How far LeFevre developed these arguments in the district court is not entirely clear, but it does not matter. Taking them all together, they simply would not permit a reasonable jury to conclude--as LeFevre now urges--that the document was altered later or is in some other respect inauthentic. Thus, the public advertisement turns out to be a government form in which there is no separate box for describing relocation benefits. The other inference arguments are no stronger, whether taken separately or together. LeFevre's other main contention is that the document is of no consequence because Waite did not actually rely on it in denying the relocation benefits. In support, LeFevre argues that she was initially told by Waite that some ____ relocation benefits would be provided, and that subsequently the reason given for denying full benefits was that she was a "new hire." We agree that an employer cannot automatically escape liability by exploiting a nondiscriminatory justification on which it did not actually rely. McKennon v. ________ Nashville Banner Pub. Co., 115 S. Ct. 879, 885 (1995).  _________________________ But any apparent inconsistency between LeFevre's version of events and the government's proffered reason--that the benefits were not authorized--fades when one looks -6- -6- carefully at the testimony. Waite testified that he told LeFevre in the initial interview that no relocation benefits were authorized, but that in a subsequent conversation he said he "would check with the central office" to see if he could get reimbursement for the household goods. He further testified that he contacted a superior in Washington, Dr. Blank, who authorized expenses for moving household goods.   Waite's detailed account of his effort to secure an exception is consistent with his initial reliance on the personnel document that said no expenses were authorized. And at the district court hearing on the Rule 50 motion, LeFevre's counsel conceded that LeFevre initially was told no relocation expenses were authorized. LeFevre's general assertion at trial--that Waite told her she would get relocation expense for household goods--was apparently a compressed version of the account given by Waite.  As for the "new hire" justification for denying full benefits, Waite conceded that this was one of reasons later given to LeFevre. But he explained that this reason originated not with him but with a VA personnel officer. Waite testified that he had no personal knowledge of the basis for the "new hire" justification and was simply deferring to the expertise of the personnel officer. Again, this testimony was uncontradicted. Title VII offers remedies -7- -7- only for discrimination and not for bureaucratic error or confusion. LeFevre's retaliation claim might or might not have more merit than her gender discrimination claim. Even though the original denial of relocation benefits was not shown to be gender based, the statute independently prohibits an employer from taking adverse action against an employee because of the fact that the employee is pursuing a Title VII claim. 42 U.S.C. 2000e-3. In this case, there is doubt whether the record would permit an inference that Waite engaged in retaliation, there being very little evidence that Waite knew at the time of the transfer that LeFevre was claiming gender discrimination. But we need not discuss the evidence at length, or rule upon the issue, because on appeal LeFevre makes no serious attempt to develop the retaliation charge as an independent claim for the jury. We normally do not address arguments not developed on appeal. Argencourt v. United States, 78 F.3d __________ ______________ 14, 16 n.1 (1st Cir. 1996). Given the thinness of the evidence as to retaliation, there is certainly no indication of plain error. Affirmed. ________ -8- -8-