DECISION
Before this Court is a Super. R. Civ. P. Rule 12(b)(6) motion to dismiss, or, in the alternative, a motion for summary judgment pursuant to Super. R. Civ. P. Rule 56, brought by Sovereign Bank ("Sovereign or Plaintiff") against David Fowlkes, Jr., Henry Seemore, Jr., Michelle Gordon-Seemore, Ian Hardman and Jennifer Hardman (collectively, "Defendants or Counterclaimants"). The Plaintiff filed the instant action to recover indebtedness owed by the Defendants under various notes and personal guaranties. The Defendants asserted sixteen counterclaims against the Plaintiff alleging, inter alia, fraud, breach of the covenant of good faith and fair dealing, duress, and unjust enrichment. Plaintiff challenges the Defendants' counterclaims based on grounds including, but not limited to, judicial estoppel, novation, res judicata, and collateral estoppel.
 I Facts and Travel
In 2001, Davin Wheels, Inc. ("Davin") began operations. Its sole shareholder was The Rhegos Group, Inc. ("Rhegos"). David Fowlkes Jr., Henry Seemore, and Ian Hardman, three of *Page 2 
the Defendants in the instant matter, were the shareholders of Rhegos. In October 2003, Sovereign and Davin entered into an asset-based loan agreement ("Original Loan") as a result of which Plaintiff extended to Davin a $2 million credit facility. In August of 2004, Sovereign increased Davin's credit line from $2 million to $3 million. In August of 2005, Sovereign declared Davin in breach of the Original Loan and demanded payment in full.
On December 28, 2005, Sovereign began an application process for a so-called Section 7(a) loan[1] to be guaranteed by the Small Business Association ("SBA"), an agency of the United States government. In January 2006, the SBA approved the Plaintiff's application to guarantee 75 percent of a loan in the amount of $2 million to assist Davin and Rhegos. (Pl. Ex. 1(B).) On February 23, 2006, Sovereign and Davin entered into the $2 million SBA guaranteed term loan agreement ("SBA Loan") evidenced by a $2 million term note. (Pl. Ex. 1(C, A).) According to the terms of the note, the proceeds of the loan were to be used to repay notes payable to Sovereign. (Pl. Ex. 1 (C).) Defendants Fowlkes, Seemore, and Hardman each executed SBA unconditional guarantee agreements guarantying payment of the last mentioned $2 million note to the Plaintiff. (Pl. Ex. 1(D-F).) Michelle Gordon-Seemore and Jennifer Hardman, the spouses of two of the before mentioned Defendants, each executed and delivered to Sovereign SBA unconditional limited guaranties. (Pl. 1(G-H).) Furthermore, the Defendants each executed mortgage deeds to secure their respective SBA unconditional guaranties. (Pl. 1(I-K).) In addition to the SBA Loan, Davin also borrowed from the Plaintiff additional sums evidenced by a $100,000 line of credit note and a $454,000 term note. These notes were also each personally *Page 3 
guaranteed by Hardman, Seemore, and Fowlkes. At the closing of the loan transactions, Sovereign entered into a Side Letter Agreement ("Letter Agreement") to confirm that Sovereign would use its commercially reasonable best efforts to work with the SBA to cause the release of Sovereign's equity mortgages on the homes owned by the Defendants. (Pl. Ex. 5(E).)
In September 2007, a temporary receiver was appointed by this Court to take charge of the assets of both Davin and Rhegos.[2]Henry Seemore, Jr., et al. v. Davin Wheels, Inc., P.B. No. 07-4813 (Filed September 12, 2007); Henry Seemore,Jr., et al. v. The Rhegos Group, Inc., P.B. 07-4814 (Filed September 12, 2007). The principal assets of both corporations consisted of the patent, names, trademarks, and all associated intellectual property rights of Davin's brand of motor vehicle wheels, particularly its patented continuous motion technology custom "spinner" wheels, as well as the associated customer and distributor lists, inventory and equipment. A permanent receiver of the corporations was appointed thereafter.
During the receivership proceeding, this Court entered an order approving Plaintiff's secured claim totaling $2,583,168.68. (Pl. Ex. 1(V).) The receiver, pursuant to an appropriate court order, sold and disposed of the corporate assets. Plaintiff received a $150,000 distribution on account of its allowed secured claim. Plaintiff demanded payment from the Defendants under their respective guaranties and proceeded to file the instant action for such indebtedness.
 II Standard of Review
It is well-settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of the complaint. See Toste Farm Corp. v. Hadbury, Inc.,798 A.2d 901, 905 (R.I. 2002) (quoting R.I. EmploymentSec. Alliance, Local 401, S.E.I.U., AFL-CIO v. State Dep't ofEmployment and Training, 788 A.2d 465, 467 (R.I. 2002)). "When ruling on a *Page 4 
Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor." Id.
(quoting Rhode Island Affiliate, ACLU v. Bernasconi,557 A.2d 1232, 1232 (R.I. 1989)). The court should grant such a motion "only when it is clear beyond a reasonable doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena v. MicrosoftCorp., 796 A.2d 461, 463 (R.I. 2002).
However, a judge need not reject affidavits or other evidence presented in support of a motion to dismiss. Laurence v.Sollitto, 788 A.2d 455, 457 (R.I. 2002). Rather, when the court receives a dismissal motion which, as in the instant matter, relies on evidence outside the pleadings, "it must be treated as a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure." Strynar v. Rahill,793 A.2d 206, 209 (R.I. 2002). Since matters outside the pleading have been presented to and not excluded by this Court, the motion is treated as one for summary judgment and disposed of as provided in Rule 56. Super. R. Civ. P. Rule 12(b). All parties have been given reasonable opportunity to present all materials pertinent to a Rule 56 motion. Id.
Summary judgment is proper when, after reviewing the admissible evidence in the light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Rule 56(c)). When considering a motion for summary judgment, "the court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion."Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980). *Page 5 
During a summary judgment proceeding, "the justice's only function is to determine whether there are any issues involving material facts." Id. (quoting Steinberg v. State,427 A.2d 338, 340 (R.I. 1981)). "Therefore, summary judgment should enter `against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Lavoie v. North East Knitting, Inc.,918 A.2d 225, 228 (R.I. 2007) (quoting Celotex Corp. v.Catrett, 477 U.S. 317, 322 (1986) (construing the substantially similar federal rule)).
 III Discussion
In the instant matter, Plaintiff has filed a complaint seeking payment from each of the Defendants under their respective guaranties. In their counterclaims, Defendants argue,inter alia, that Plaintiff fraudulently induced them into entering into the Original Loan and the various personal guaranties. In addition to attacking each of the sixteen counts of the counterclaims individually, Plaintiff also argues that all or most of the claims asserted by the Defendants should be barred by the doctrines of judicial estoppel, novation, res judicata, and/or collateral estoppel. Plaintiff argues that the claims asserted by the Defendants in Counts I, III, V, VII, X, XI, XII, XIII, XIV, and XVI[3] of the counterclaims are barred by the doctrine of res judicata because the *Page 6 
Defendants had a full and fair opportunity to litigate these same claims and issues in the previous receivership proceeding. According to the Plaintiff, all of these claims, even those relating to the Original Loan, were part of the transaction, or series of connected transactions, out of which the action in the receivership proceeding arose. However, the Defendants argue that the limited nature of a receivership proceeding precludes application of res judicata to bar subsequent litigation of claims arising from transactions possibly at issue during the receivership.
The doctrine of res judicata applies as an absolute bar to a second cause of action where there exist identity of parties, identity of issues, and finality of judgment in an earlier action.Plunkett, 869 A.2d at 1188 (R.I. 2004) (citing Beirne v.Barone, 529 A.2d 154, 157 (R.I. 1987)). The term "res judicata" is commonly used to refer to two preclusion doctrines: (1) collateral estoppel or issue preclusion; and (2) res judicata or claim preclusion. Plunkett v. State,869 A.2d 1185, 1188 (R.I. 2005) (citing Foster-Glocester RegionalSchool Committee v. Board of Review,854 A.2d 1008, 1014 (R.I. 2004)). In Plunkett, the Rhode Island Supreme Court chose to follow the United States Supreme Court by electing to use the terms "claim preclusion" and "issue preclusion," instead of res judicata, so as to avoid confusion.Id.
While issue preclusion operates as a bar to the relitigation of "an issue of ultimate fact that has been actually litigated and determined," claim preclusion prevents the "relitigation of all the issues that were tried or might have been tried in the original suit." Foster-Glocester Regional School Committee,854 A.2d at 1014 n. 2 (R.I. 2004) (quoting E.W. Audet Sons,Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey,635 A.2d 1181, 1186 (R.I. 1994)). However, both require (1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding.E.W. Audet Sons, *Page 7 Inc., 635 A.2d at 1186 (citing State v. Chase,588 A.2d 120, 122 (R.I. 1991)).
Therefore, the first flaw in the Plaintiff's argument for preclusion is that the prior receivership proceeding and the instant action lack an identity of parties. The preclusive effect of both claim and issue preclusion only "relates to the effect of a final judgment between the parties to an action and those in privity with those parties." Lennon v. Dacomed Corp.,901 A.2d 582, 591 (R.I. 2006) (quoting E.W. Audet Sons,Inc., 635 A.2d at 1186). A party to an action has been defined as "[a] person who is named as a party to an action and subjected to the jurisdiction of the court * * *." Id. (citing Restatement (Second) Judgments § 34(1) at 345.
However, in this instance, two of the Defendants, Mrs. Hardman and Mrs. Gordan-Seemore, were neither parties to the receivership proceeding nor in privity with those parties. Parties are in privity for purposes of res judicata when there is a commonality of interest between them and when they sufficiently represent each other's interests. Lennon, 901 A.2d at 582 (2006). The term `privity' indicates a mutual or successive relationship to the same rights of property rather than simply a relationship between the persons.O'Brien v. Costello,100 R.I. 422, 429, 216 A.2d 694, 698-99 (1966); seealso Lennon, 901 A.2d at 591 (2006). Accordingly, the marriage relationships themselves between the Defendants do not create privity for the purposes of res judicata. Id. Further, since Mrs. Hardman and Mrs. Gordan-Seemore each individually executed an unconditional limited guarantee for $2 million, they have independent interests which are not sufficiently represented by the other Defendants. Consequently, a defense of res judicata cannot act to summarily bar claims asserted by these two particular Defendants.
Additionally, the application of both claim and issue preclusion requires that there be an identity of issues. E.W.Audet Sons, Inc., 635 A.2d at 1186 (citing State v.Chase, 588 A.2d 120, *Page 8 
122 (R.I. 1991)). Our Supreme Court has further subdivided the first requirement, identity of issues, into three factors: (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided. Id. (citing Chase,588 A.2d at 123 (R.I. 1991)). Further, the primary function of a court overseeing receivership proceeding is to ensure that the receiver manages, preserves, and maximizes the value of the assets of the receivership estate for the benefit of all the affected parties. Brill v. Citizens Trust Co.,492 A.2d 1215, 1217 (1985). Accordingly, the Court notes that the Davin and Rhegos case was a classic receivership proceeding concerned with the orderly liquidation of assets and not claims of the nature now asserted in this action. The issues sought to be precluded here, such as fraud, breach of fiduciary duty, duress, negligence, intentional interference with a contract, and unjust enrichment were never considered by this Court or litigated in the receivership proceeding. Moreover, at the end of the receivership proceeding, this Court had not made any determinations regarding the Original Loan. For the foregoing reasons, summary judgment, a judgment on the merits based on the doctrine of res judicata, is not an appropriate remedy in this case.[4] See Smith v. RhodeIsland's Only 24 Hour Truck Auto Plaza, Inc.,749 A.2d 590 (R.I. 2000) (finding that where the receivership court had never made a determination regarding any aspect of accrued distributions, summary judgment was inappropriate).
Plaintiff also asserts that this Court should grant summary judgment on various counterclaims based upon the doctrine of novation, arguing that the Original Loan was replaced *Page 9 
and superseded by the express terms of the 2006 notes, authorization, and agreements, and paid in full pursuant to the same. Plaintiff points to the language in all three term loan agreements wherein Davin agreed that the schedules and exhibits attached thereto "supercede all prior agreements, representations and understandings of the parties," as well as to the fact that the Original Loan was paid in full via the express terms of the notes and authorization. Defendant's position is that the defense of novation fails as a matter of law. They assert that the integration clauses do not evidence a novation because the ordinary effect of such clauses is to preclude the admission of parol evidence and not to unravel all binding contracts into which the parties have previously entered. Further, Defendants also point to the language of the SBA Loan agreement which provides that Davin use the proceeds of the 2006 SBA Loan "to repay notes payable to lender." They contend that this language evidences contemplated future performance on the earlier agreement, rather than simply extinguishing the earlier agreement.
A novation is generally defined as the "act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party." Weaver v. American Power Conversion Corp.,863 A.2d 193, 197 (R.I. 2004) (quotingBlack's Law Dictionary 1091 (7th ed. 1999)). The Rhode Island Supreme Court has also characterized a novation as a "substituted contract." Salo Landscape ConstructionCo. v. Liberty Electric Co.,119 R.I. 269, 274 n. 2, 376 A.2d 1379, 1382 n. 2 (1977) (citing 6 Corbin on Contracts, § 1293 189-90 (1962)). On the other hand, an "accord and satisfaction" is "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance." Weaver, 863 A.2d at 198 (quotingBlack's Law Dictionary 17 (7th ed. 1999). However, according to the Rhode Island Supreme Court: *Page 10 
 [I]t matters not whether we refer to this transaction as an accord and satisfaction or as a rescission followed by the formation of a new contract [novation]; the significant and essential element in either instance under the substituted contract theory is a factual determination that the original contractual rights and obligations of both parties were extinguished and new contractual rights and liabilities created for each, all by their mutual agreement." Weaver, 863 A.2d at 198 (R.I. 2004) (quoting Salo Landscape Construction Co., 119 R.I. at 274, 376 A.2d at 1382 (1977)).
Therefore, this Court will not focus on such semantics but rather analyze whether the 2006 agreement operated to discharge all the rights and obligations created under the Original Loan.
Although, a novation is never presumed it need not be expressly stated and can be inferred from the facts and the conduct of the parties. Weaver, 863 A.2d at 198 (citing Jewel Co.of America, Inc. v. George,118 R.I. 372, 375, 373 A.2d 1200, 1202 (1977)). In the instant matter, Davin was in breach of the Original Loan and Plaintiff was demanding payment in full. After months of discussions between Defendants Fowlkes, Seemore, Hardman, and Sovereign, the decision was made for Sovereign to apply for an SBA loan, the proceeds of which would be utilized to repay the defaulted Original Loan. The new SBA Loan between Sovereign and Davin discharged the obligations under the Original Loan by containing express language that the proceeds from the new loan "shall be used to repay notes payable to Lender." The ongoing discussions between the parties as well as the provisions of the SBA Loan agreement provide sufficient evidence that the parties intended to extinguish and replace the Original Loan with the SBA Loan. Defendants have failed to present any evidence disputing this issue. Therefore, this Court grants summary judgment as to Counts I, III, V, and VIII which assert claims pertaining to the Original Loan. *Page 11 
 A Personal Guaranty Claims
In Counts II, IV, and VI, Defendants allege that Sovereign made misrepresentations, either intentionally or negligently, regarding removing the principals' personal residences from the guaranties. Plaintiff asks this Court to grant summary judgment as to Counts II and IV of the counterclaims because Sovereign did not fraudulently induce or intentionally misrepresent to the Defendants that it would attempt to have their personal residences removed from the personal guaranties. Plaintiff insists that the Letter Agreement confirms that Sovereign intended to use its commercially reasonable best efforts to work with the SBA to cause the release of the personal mortgages. (Pl. Ex. 5(E).) In addition, even though the fraud claims involve issues of intent, Plaintiff contends that summary judgment is appropriate because Defendants rest upon conclusory allegations. However, Defendants argue that Plaintiff did not use "commercially reasonable best efforts" or any efforts at all to have the residences removed from the guaranties. Further, Defendants assert that summary judgment should be denied because absent Sovereign's repeated assurances that the mortgages would be removed as soon as possible, Defendants never would have signed the mortgages.
The tort of intentional misrepresentation or fraud under the common law is well established in Rhode Island law. In order to establish a claim for fraud, "the plaintiff must prove that the defendant `made a false representation intending thereby to induce plaintiff to rely thereon' and that the plaintiff justifiably relied thereon." Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996) (quoting Cliftex Clothing Co. v. DiSanto,88 R.I. 338, 344, 148 A.2d 273, 275 (1959)). Similarly, fraud in the inducement is misrepresentation as to terms, quality or other aspects of contractual relation, venture or other transaction that leads a person to agree to enter into a transaction with false impression or understanding of risks, duties or obligations he or she *Page 12 
has undertaken. Bourdon's, Inc. v. Ecin Industries, Inc.,704 A.2d 747, 753 (R.I. 1997) (quoting Stebbins v. Wells,766 A.2d 369, 372 (R.I. 2001)). On the other hand, negligent misrepresentation, a lesser included claim of fraudulent misrepresentation, "differs from fraudulent misrepresentation only in that, while the latter requires knowledge that the pertinent statement was false, the former merely requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information." Am JurFraud § 128 (citing Fleming Companies, Inc. v. GAB BusinessServices, Inc., 103 F. Supp. 2d 1271 (D. Kan. 2000));see also Manchester v. Pereira,926 A.2d 1005, 1012 (R.I. 2007) (citing Mallette v. Children'sFriend and Service, 661 A.2d 67, 69 (R.I. 1995)).
To prove fraudulent misrepresentation, the Defendants must show not only that the Plaintiff had an intention to deceive, but also that Defendants detrimentally relied upon the fraudulent representation. Asermely v. Allstate Ins. Co.,728 A.2d 461, 463 (R.I. 1999). In regards to the personal guaranties, Defendants claim that Sovereign knew that it would not attempt to remove the residences. Further, Defendants maintain that but for the promise to use commercially best efforts to remove the residence from the guaranties, Defendants would not have executed the agreements. (Defs. Counterclaims ¶ 123-127 and Fowlkes Aff. ¶ 43.) In opposition, Plaintiff contends that prior to entering into the Letter Agreement, Sovereign contacted the SBA and confirmed the feasibility of possibly releasing the mortgages. According to Plaintiff, it was Davin's own inability to improve its profitability that prevented Sovereign from removing the mortgages.
A representation that relates to future conduct is generally not actionable. Grassi v. Gomberg,81 R.I. 302, 304, 102 A.2d 523, 524 (1954). However, a promise to act in the future, with a present intent not to fulfill that promise, is an exception to the general rule that a *Page 13 
misrepresentation must relate to an existing or past fact.Id. (citing Swift v. Rounds,19 R.I. 527, 35 A. 45 (1896) (stating that when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, the victim has a remedy by action or defense)). Accordingly, an intent to deceive is an essential element in an action for fraud. Cliftex Clothing Co., Inc.,88 R.I. at 344, 148 A.2d at 275 (citingWhite Co. v. Fitch, 19 R.I. 687, 36 A. 425 (1897)). In some cases, where elusive concepts such as intent are at issue, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Vingi v. State, 991 F.Supp. 44, 47 (D.R.I. 1997) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.,896 F.2d 5, 8 (1st Cir. 1990)).
However, in the instant matter, there are genuine issues of material fact in dispute. Defendants allege that Plaintiff knew there would be a problem removing the residences from the SBA Loan because Sovereign actively concealed its concerns regarding Davin's foreign based inventory during the SBA approval process. (Defs. Answer Countercl. ¶ 58; Folwkes Aff. ¶ 35.) Additionally, Defendants have presented evidence that once the SBA Loan was finalized and Sovereign received the proceeds, Sovereign unreasonably refused several financing options that would help Davin's business to improve and cause the release of the mortgages. (Defs. Answer Countercl. ¶ 68; Fowlkes Aff. ¶ 55) In order to support its motion for summary judgment, Plaintiff has filed an affidavit asserting it "entered into the Letter Agreement with each of the Guarantors confirming that Sovereign would use its commercially reasonable best efforts" to cause the release of the Mortgages. (Pl. Ex. 5 at ¶ 8.) The affidavit further states that Sovereign contacted the SBA to confirm the feasibility of such a process. (Id. at ¶ 9.) The Plaintiff has failed to present any further evidence establishing its intentions regarding the release of the mortgages. Therefore, after reviewing the evidence in the light most favorable to *Page 14 
the Defendants, there remain genuine issues of material fact in dispute concerning Sovereign's intentions and the truth of statements made to Defendants regarding working with the SBA to remove the mortgages from the personal guaranties. Accordingly, this Court denies summary judgment as to Counts II and IV of the counterclaims.
Defendants also have asserted claims for negligent misrepresentation and negligence pertaining to the personal guaranties. Plaintiff first asserts that Defendants have failed to allege a cognizable duty that Sovereign owed to the Defendants, an essential element of a claim for negligent misrepresentation, and therefore Defendants' claim fails as a matter of law. As in any negligence action, a duty between the parties must exist in order for the claimant to prevail. See Restatement (Second) of the Law of Torts § 304 comment a. (stating negligent misrepresentation is included in the catalogue of negligent conduct). However, it is well-settled that "in order to establish a prima facie case of negligent misrepresentation, the plaintiff must establish the following elements:
 (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. Mallette v. Children's Friend Serv., 661 A.2d 67, 69-70 (R.I. 1995).
Defendants were not required to specifically allege a duty in Count VI when pleading a claim for negligent misrepresentation, and accordingly, their claim does not automatically fail as a matter of law.
Plaintiff also maintains that this Court should grant summary judgment as to both claims for negligent misrepresentation and negligence because Defendants have not presented any facts *Page 15 
that trigger a duty of care beyond any obligation set forth in the loan documents. According to Plaintiff, Defendants' claims that Sovereign had "a duty to fully disclose all terms and conditions of its lending relationship with the Guarantors" does not represent a legally cognizable duty. Plaintiff continues that even if Defendants have properly alleged that Sovereign owed them a legal duty, Defendants wrongfully seek to elevate their relationship with Sovereign to one beyond that found in a normal lender-creditor relationship. Defendants counter that the Rhode Island Supreme Court has specifically recognized that a bank owes certain duties to its customers. See Volpe v. Fleet National Bank,710 A.2d 661 (R.I. 1998). They contend that the duty of care was highlighted by Sovereign's promise to utilize "commercially reasonable best efforts" to attempt to remove the mortgages from the guaranties. Defendants further argue that Plaintiff breached this ordinary duty of care not only by arbitrarily and capriciously opposing various financing options available to Davin but also by undermining Davin's business interests.
Whether a duty of care runs from a defendant to a plaintiff is a question of law for the court to decide. Volpe,710 A.2d at 663 (R.I. 1998). Under Rhode Island law, those parties that stand in the debtor and creditor relationship will be governed by the terms of the contract which they enter into at the time of the establishment of the relationship. Griffin v. CentrevilleSav. Bank, 171 A.2d 204, 206-207 (R.I. 1961). Defendants have not alleged that Plaintiff breached the terms and conditions in the SBA Loan or the guaranties but rather do allege that Plaintiff failed to fully and adequately disclose all terms and conditions of its relationship with the Defendants. Also, Defendants assert that Plaintiff failed to fulfill its promise to use best efforts to remove the personal residences from the guaranties, which was contained in the Letter Agreement from Plaintiff to Defendants. (Pl. Ex. 5(E).) As discussed supra, there remain genuine issues of material fact in dispute concerning Sovereign's intentions and the truth of *Page 16 
statements made to Defendants regarding working with the SBA to remove the mortgages from the personal guaranties. Accordingly, summary judgment is denied as to Counts VI for negligent misrepresentation and XII for negligence.
 B Deceptive Trade Practices Claims
In Count IX, Defendants allege that Plaintiff violated Rhode Island's Deceptive Trade Practices Act, G.L. 1956 § 6-13.1-1 et seq., by making false and misleading statements regarding the removal of the personal residences from the various guaranties. Section 6-13.1-2 expressly provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." The Rhode Island Act only provides private rights of action to the Attorney General and to "person[s] who purchase or lease goods or services primarily for personal, family, or household purposes . . ." Sections 6-13.1-5, 6-13.1-5.2.
Here, since Defendants allege that Sovereign made false and misleading statements to Davin and its principals, they lack standing to assert claims under the Act. See Schroeder v.Lotito, 577 F.Supp. 708, 717 (D.R.I. 1983) (dismissing plaintiffs' claims pursuant to § 6-13.1-1 et seq., because individual plaintiff, suing in his official capacity as a union member and officer, and his union were not within the class of persons permitted to prosecute private actions under the act);see also R.I. Depositors Economic ProtectionCorp. v. Hayes, 1994 WL 62165 at 5 (D.Mass. 1994) (holding that § 6-13.1-1 et seq., unlike its Massachusetts counterpart, does not include within its scope business people injured in the course of business). Therefore, since the Defendants in this action are not within the class of persons permitted to prosecute private actions under the statute, this Court grants summary judgment as to Count IX. *Page 17 
 C Remaining Claims
Defendants have asserted seven other counterclaims related to their lending relationship with Sovereign. In Count VII, Defendants allege that Sovereign breached the covenant of good faith and fair dealing implied in every contract executed in Rhode Island by engaging in arbitrary and unreasonable conduct with respect to the Original Loan and personal guaranties. Plaintiff contends that because the Defendants have not alleged a breach of contract claim in their plethora of counterclaims, no independent cause of action exists for an alleged breach of an implied duty of good faith and fair dealing. Defendants counter that while conduct envisioned as part of the parties' contract may not give rise to a breach of the covenant, conduct that is outside the contract may give rise to such a breach. They reason that since Sovereign's actions were unreasonable, improper, and adversely affected the Defendants, they have a valid cause of action for breach of an implied duty of good faith and fair dealing.
It is well-settled in Rhode Island that "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." Dovenmuehle Mortgage, Inc. v. Antonelli,790 A.2d 1113, 1115 (R.I. 2002) (quoting Centerville Builders,Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996)). The purpose of such a covenant is so that the contractual objectives may be achieved. Ide Farm Stable, Inc. v. Cardi,297 A.2d 643, 644-45 (1972). Accordingly, Plaintiff argues that since it was acting consistent with the objectives and terms of its contracts with Defendants when it exercised its right to demand payment under the guaranties, there cannot be a valid action for breach of an implied covenant of good faith and fair dealing. However, Plaintiff's reliance on the holding in HordCorp. v. Polymer Research Corp. of Am., is misplaced. 275 F.Supp. 2d 229, 237 (D.R.I. 2003). *Page 18 
Plaintiff is mistaken in suggesting that according toHord, whenever the terms of a contract are not breached, there cannot arise a claim for breach of the covenant of good faith and fair dealing. In Hord, the court emphasized that it is the parties' contractual objectives that "form the permissible bounds of the good faith requirement for a given contract." HordCorp., 275 F.Supp. 2d at 238 (D.R.I. 2003) (citing ThompsonTrading Ltd. v. Allied Breweries Overseas Trading Ltd.,748 F.Supp. 936, 942-43 (D.R.I. 1990)). Thus, the court found that since the parties included the express option to terminate as a protective measure in the event the defendant created unsatisfactory rhinestones, and the plaintiff terminated based on its dissatisfaction, plaintiff did not violate the implied covenant of good faith and fair dealing. Hord Corp.,275 F.Supp. 2d at 238 (D.R.I. 2003); see alsoDovenmuehle Mortgage, Inc., 790 A.2d at 1115 (R.I. 2002) (holding that where plaintiff was under no contractual obligation to pay the property taxes, failing to do so did not result in a breach of the implied duty of good faith and fair dealing). Therefore, "a party's actions must be viewed against the backdrop of contractual objectives in order to determine whether those actions were done in good faith." Hord Corp., 275 F.Supp. 2d at 238 (D.R.I. 2003) (quoting Thompson, 748 F.Supp. at 942-43 (D.R.I. 1990)).
Similarly, in the instant action, the express terms of the SBA Loan were not breached by the Plaintiff. The Defendants were in default of their obligations and the Plaintiff was entitled to demand payment. However, in addition to the SBA Loan, the notes and the guaranties, the parties included a Letter Agreement, signed by both Sovereign and Davin, which placed an affirmative obligation upon Sovereign to use "commercially reasonable best efforts to work with the SBA to cause the release of Sovereign's equity mortgages on the homes owned by [the Defendants]." (Pl. Ex. 5(E).) Such an addition to the agreement evidences that the parties expected that Sovereign would act in good faith and take all reasonable steps to obtain such *Page 19 
removal. See Bradford Dyeing Ass'n, Inc. v. J. Stog TechGmbH, 765 A.2d 1226, 1235 (R.I. 2001); see alsoPsaty Fuhrman, Inc. v. Housing Authority,76 R.I. 87, 93, 68 A.2d 32, 36 (1949) (holding that where one exacts a promise from another to perform an act, the law implies a counter promise against arbitrary or unreasonable conduct on part of the promisee). While Sovereign asserts that it complied with the contractual obligations and objectives, it has not presented any evidence of such compliance. Therefore, whether the Plaintiff breached the implied covenant of good faith and fair dealing may not be resolved on a motion for summary judgment.
In Count X, Defendants allege that Plaintiff, which had a course of dealing with the Defendants, made material misrepresentations with full knowledge that Defendants were relying on them, thereby breaching its fiduciary duty to the Defendants. Plaintiff argues that this Court should grant summary judgment as to Count X because absent a showing of unique circumstances, which are lacking in the instant matter, banks do not owe fiduciary duties to their debtors. Plaintiff highlights that prior to the 2003 loan transaction, Defendants never had any commercial banking relationship with Sovereign. Additionally, in connection with the 2006 loan agreement and the guaranties, Defendants were represented by counsel. (Compl. Ex. T.) Defendants reason that since they relied on recommendations and advice offered by Sovereign concerning the SBA loan and the personal guaranties, more than a banker client relationship existed, and a fiduciary relationship was created.
When considering the existence of a fiduciary relationship, the Rhode Island Supreme Court has said a court may consider a variety of factors, including "the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow *Page 20 
the other's guidance in complicated transactions." Santucci v.Citizens Bank of R.I., 799 A.2d 254, 258 (R.I. 2002) (quotingSimpson v. Dailey, 496 A.2d 126, 129 (R.I. 1985)). While the First Circuit has previously noted that courts are split on whether a fiduciary relationship may exist between a bank and a borrower, no state or federal court in Rhode Island appears to have found such a relationship to exist. In re Belmont RealtyCorp., 11 F.3d 1092, 1101 (1st Cir. 1993) (citingReid v. Key Bank of Southern Maine, Inc.,821 F.2d 9, 17 (1st Cir. 1987)); see also FleetNational Bank v. Liuzzo, 766 F.Supp. 61, 68 (D.R.I. 1991) (granting summary judgment in favor of lender, finding no evidence that lender and borrower intended a fiduciary relationship beyond relationship of debtor-creditor).
Here, Defendants claim a fiduciary relationship exists because they had a course of dealing with Sovereign, they relied on Sovereign's recommendation to hire a consultant, and they relied on Sovereign's overall recommendations and guidance in the loan transactions. However, for a fiduciary relationship to develop, a good business relationship with a banker is not sufficient, but rather some kind of dependency for advice that makes the relationship more than a normal banker-client relationship is necessary. Id. at 1101; see also Reid,821 F.2d at 17 (1st Cir. 1987). Defendants' choice to hire an independent consultant, even one recommended by Sovereign, did not create an elevated fiduciary relationship. SeeFleet Nat. Bank, 766 F.Supp. at 61 (D.R.I. 1991) (Lender, which insisted that borrower retain particular financial advisor, who in turn allegedly communicated confidential information to lender, could not be held liable for breach of fiduciary duty absent showing that lender and borrower intended fiduciary relationship to exist beyond terms of their contractual debtor-creditor relationship.) Furthermore, Plaintiff has provided evidence that the loan documents were reviewed by special counsel for the Defendants, evidencing the intent by Sovereign for an arm's length transaction. (Pl. Ex. 5(C), *Page 21 
(D).) The relationship between the parties did not develop into one requiring fiduciary duties and therefore this Court must grant summary judgment as to Count X.
In Count XI for Duress, Defendants claim that Sovereign coerced the Davin principals into signing various agreements by using wrongful and inappropriate threats. Plaintiff asserts that Defendants' claims of duress are baseless. However, according to the Plaintiff, even if the guaranties were signed under duress, the Defendants have ratified them by waiting over two years before seeking to disaffirm. Alternatively, Defendants argue that they were under significant duress when executing the personal guaranties and a paramount public interest supports their claims.
A contract created under duress is not automatically void, but rather voidable. McGee v. Stone, 522 A.2d 211, 214 (R.I. 1987) (citing Barnette v. Wells Fargo Nevada National Bank,270 U.S. 438 (1926)). Further, a party asserting duress must act promptly because failing to object may ratify the agreement or affirm the conduct in question. Id. In the instant matter, the Defendants waited two years before contesting the validity of the personal guaranties. Moreover, "[a] party who has received the benefit of the performance of a contract will not be permitted to deny his or her obligations unless paramount public interest requires it." Id. at 215 (citing City of Warwick v. BoengCorp., 472 A.2d 1214, 1218 (R.I. 1984)). Here, the Defendants benefited by receiving the proceeds of the SBA loan to repay their original loan agreement with Sovereign. Therefore, Defendants cannot now assert a claim for duress to question the validity of the guaranties.
However, Defendants argue that paramount public interest requires this Court to deny summary judgment. Defendants contend that Sovereign's continued threats of financial harm forced Defendants to execute the personal guaranties. Additionally, Defendants claim that *Page 22 
Sovereign knew that by forcing the Defendants to execute the Personal Guaranties and then forcing Davin into receivership, Sovereign would receive $1.5 million from the SBA. This Court is mindful of Defendants' public policy concerns, but believes judicial restraint is necessary in the instant matter. The Court notes Defendants' delay of more than two years before asserting a claim for duress. Moreover, in connection with the notes and the personal guaranties, the Defendants were represented by counsel. Consequently, this Court finds summary judgment warranted on Count XI for duress.
In Count XIII, Defendants allege that Sovereign intentionally interfered with the expected contract between Mobile Hi-Tech Wheels, Inc. ("MHT") and Davin.[5] To prevail on a claim of tortious interference with prospective contractual relations, [6] a plaintiff must show "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Mesolella v. City of Providence,508 A.2d 661, 669-70 (R.I. 1995). Further, that the mere existence of intentional interference is not enough, but rather a showing of legal malice — an intent to do harm without justification — is also necessary. Belliveau Bldg. Corp. v. O'Coin,763 A.2d 622, 627 (R.I. 2000) (citing Jolicoeur FurnitureCo. v. Baldelli, 653 A.2d 740, 753 (R.I. 1995)). Once the plaintiff establishes the prima facie elements, the burden shifts to the defendant to show justification. Mesolella,508 A.2d at 670 (R.I. 1995). *Page 23 
Neither of the parties have specifically addressed the claim for tortious interference with expected contractual relations in their papers. Notwithstanding such a lack of discussion, this Court finds that Defendants have properly asserted such a claim. Defendants have presented evidence of Davin's business relationship with MHT and Sovereign's knowledge of that relationship. Further, Defendants have offered evidence that, despite previously agreeing to approve the expected agreement between Davin an MHT, Sovereign unreasonably and without justification eventually prevented the agreement from proceeding, causing Davin significant financial harm. Whether or not Sovereign actually interfered or whether any such interference was justified is not a question to be resolved on summary judgment, an extreme remedy requiring cautious application. Thus, this Court denies Plaintiff's motion for summary judgment on Count XIII of the counterclaims.
Count XIV of the counterclaims alleges that Sovereign has been unjustly enriched by wrongfully enhancing its position financially relating to its lending relationship with Davin and its principals. Plaintiff argues that this Court should grant summary judgment on Count XIV because the relationship between the partiers is clearly governed by express contract and a claim of unjust enrichment is only for equitable recovery where no rights on an enforceable contract exist. Plaintiff adds that even if a claim of unjust enrichment is available to the Defendants, they have failed to meet the required elements. Defendants counter that several courts have recognized a claim for unjust enrichment where fraud or other circumstances have rendered a contract inoperative. Defendants continue that by coercing Defendants to sign the guaranties and disregarding promises and representations, Sovereign wrongfully gained significant benefits without adhering to its bargain. *Page 24 
Unjust enrichment is an equitable doctrine that in the absence of an enforceable contract allows a plaintiff to recover a benefit conveyed to a defendant if that defendant''s ongoing possession would be unjust. Café La France, Inc. v. Schneider Sec.,281 F. Supp. 2d 361, 375 (D.R.I. 2007) (citing Doe v.Burkland, 808 A.2d 1090, 1095 (R.I. 2002)). Plaintiff's argument that this claim must fail because the parties' relationship is governed by express contract is mistaken. In the instant matter, the Defendants have alleged and presented evidence that the personal guaranties were procured through fraud and therefore unenforceable.Hasbro, Inc. v. Mikohn Gaming Corp.,491 F.Supp. 2d 256, 264 (D.R.I. 2007). Accordingly, Defendants have a viable claim for unjust enrichment provided they establish a prima facie case for such a claim.
To recover under a claim for unjust enrichment, "a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Narragansett Elec. Co. v. Carbone,898 A.2d 87, 99 (R.I. 2006)). In connection with the first element, Defendants claim "Sovereign wrongfully gained significant benefits without adhering to its end of the bargain," but do not specify what those benefits are. There can be an assumption that it was the repayment of the Original Loan with proceeds from the SBA Loan, payments made during the receivership proceeding on Sovereign's secured claim, as well as interest earned from the lending relationship. However, Sovereign was entitled to that money as a secured creditor and a lender. Defendants also assert that Sovereign gained $1.5 million from the SBA to the detriment of the Defendants. However, that seems to be a benefit conferred by the SBA to Sovereign, rather than by the Defendants to Sovereign.
Further, recovery for unjust enrichment is based upon the equitable principle that one *Page 25 
cannot enrich himself or herself at the expense of another by receiving property or benefits without making compensation for them.R B Electric Co. v. Amco Construction Co.,471 A.2d 1351, 1355 (R.I. 1984). In the instant matter, Plaintiff loaned Davin and its principals considerable amounts of money, over $2 million, and therefore it cannot be said that the Plaintiff has failed to compensate the Defendants for any benefit conferred. Accordingly, this Court grants summary judgment on Count XIV for unjust enrichment.
Count XV of the counterclaims for negligent infliction of emotional distress charges Sovereign with extreme and outrageous conduct that has caused the Defendants physical harm. In Rhode Island, only two classes of persons may bring claims for negligent infliction of emotional distress: those within the "zone-of-danger" who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured.Jalowy v. Friendly Home, Inc., 818 A.2d 698, 710 (R.I. 2003) (citing Marchetti v. Parsons,638 A.2d 1047, 1049, 1051 (R.I. 1994)). The Defendants do not allege that they were in any physical danger by the actions of Sovereign. The actions of the Plaintiff did not physically endanger any of the Defendants in order to permit bystander recovery. For these reasons, this Court grants summary judgment on Count VX for negligent infliction of emotional distress.
Finally, in Count XVI, Defendants have filed a claim for lender liability asserting that "Sovereign has negligently, intentionally, wantonly breached various duties owed" to Sovereign which caused Defendants to suffer damages. Although Defendants' counterclaims need not set out the precise legal theory upon which the claim is based, the counterclaims must give the opposing party fair and adequate notice of type of claim being asserted. Konar v. PFLLife Ins. Co., 840 A.2d 1115, 1118 (R.I. 2004) (citingHendrick v. Hendrick, 755 A.2d 784, 791 (R.I. 2000)); Super. R. Civ. P. Rule 8(a)(1). However, here, Defendants have declared a claim for *Page 26 
"lender liability" which is not a particular cause of action but rather the umbrella term used to describe the body of common and statutory law covering a broad spectrum of claims, including both contract and tort, against lending institutions. Further, neither the counterclaims nor the Defendants' memorandum specify any theory under the umbrella of lender liability which the Defendants are pursuing. The Court also notes that the remaining counts in the Defendants' counterclaims adequately address the many theories that can be asserted in a lender liability case. Accordingly, this Court grants summary judgment on the final count of the counterclaims for "lender liability."
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that the Defendants' counterclaims are not summarily barred by the doctrines of judicial estoppel, res judicata, or collateral estoppel. This Court does find, however, that the SBA Loan became a substitute contract discharging all the rights and obligations created under the Original Loan. Accordingly, this Court grants summary judgment as to Counts I, III, V, and VIII, which assert claims pertaining to the Original Loan. Further, with regard to the deceptive trade practices claims in Counts VIII and IX, the Defendants in this action are not within the class of persons permitted to prosecute private actions under the statute and thus, this Court grants summary judgment. In addition, since the relationship between the parties did not develop into one requiring fiduciary duties, this Court grants summary judgment as to Count X. In Count XI for Duress, this Court grants summary judgment finding that the Defendants' failed to act promptly, waiting more than two years before asserting such a claim, therefore affirming the conduct in question. Summary judgment on Count XIV for unjust enrichment is also warranted because Defendants did not present evidence that the Plaintiff *Page 27 
failed to compensate them for any benefit conferred. This Court further grants summary judgment on Count XV for negligent infliction of emotional distress finding that the actions of the Plaintiff did not physically endanger any of the Defendants in order to permit a claim for bystander recovery. Moreover, the Court grants summary judgment on Count XVI for "lender liability" which is not a proper cause of action but rather a term used to describe cases against lending institutions.
However, the matter is not entirely resolved on the basis of summary judgment. Since there remain genuine issues of material fact in dispute concerning Sovereign's intentions and the truth of statements made to Defendants regarding working with the SBA to remove the mortgages from the personal guaranties, summary judgment is denied as to Counts II, IV, VI, and XII of the counterclaims which allege both fraud and negligence in the procurement of such guaranties. Additionally, there remain genuine issues of material fact in dispute regarding whether Sovereign complied with the contractual obligations and objectives as established in the Letter Agreement. Therefore, Count VII for breach of the implied covenant of good faith and fair dealing may not be resolved on summary judgment. Further, whether or not the Plaintiff actually interfered with the business relationship between Davin and MHT, or whether any such interference was justified, is a question that cannot be resolved on a motion for summary judgment.
Counsel may present an agreed upon Order consistent with the Decision rendered herein or competing Orders if one cannot be agreed upon.
[1] Section 7(a) of the Small Business Act authorizes the SBA to provide loans to small American businesses. The 7(a) loan program is designed to help start-up and existing small businesses obtain financing when they might not otherwise be eligible for business loans. To be considered for such a loan, a borrower must meet certain eligibility requirements such as size, type, approved use of proceeds and ability to repay. Under the program, a participating lender executes the loan with the borrower according to specific SBA requirements. The lender receives a guaranty from the SBA on a portion of that loan. However, the small business is obligated to repay the full amount of such loan.
[2] Although Defendants Fowlkes, Mr. Seemore, and Mr. Hardman filed two separate receivership proceedings for Davin and Rhegos, these cases were treated as consolidated before this Court.
[3] The Defendants have asserted the following counterclaims:
 Count I — Intentional Misrepresentation/Fraud: Original Loan
 Count II — Intentional Misrepresentation/Fraud: Personal Guaranties
 Count III — Fraudulent Inducement: Original Loan
 Count IV — Fraudulent Inducement: Personal Guaranties
 Count V — Negligent Misrepresentation: Original Loan
 Count VI — Negligent Misrepresentation: Personal Guaranties
 Count VII — Breach of the Covenant of Good Faith and Fair Dealing
 Count VIII — Violation of R.I. Deceptive Trade Practices Act: Original Loan
 Count IX — Violation of R.I. Deceptive Trade Practices Act: Personal Guaranties
 Count X — Breach of Fiduciary Duty
 Count XI — Duress
 Count XII — Negligence
 Count XII — Intentional Interference with a Contract
 Count XIV — Unjust Enrichment
 Count XV — Negligent Infliction of Emotional Distress
 Count XVI — Lender Liability.
[4] The Plaintiff has made a similar argument that Defendants should be judicially estopped from asserting all of the claims in the counterclaim due to Defendants' prior inconsistent position in the receivership proceeding. This argument is based on the fact that in their signed and sworn receivership petitions, Defendants Fowlkes, Seemore, and Hardman represented that Sovereign is a first priority creditor secured by all of Davin's assets and the guaranties of such Defendants. As discussed supra, the issues now being litigated were not subjects of the prior receivership proceeding and this Court declines to summarily bar them based on the discretionary doctrine of judicial estoppel.
[5] Davin had licensed the use of a custom spinner wheel patent to MHT. Davin then attempted to create an equity partnership, whereby MHT would manufacture and distribute the product while Davin would market and promote it. According to the Defendants, in exchange for Davin executing a licensing and purchasing agreement with MHT, MHT was to provide Davin with a $350,000 cash payment as well as a $300,000 letter of credit.
[6] Although in their counterclaims Defendants have entitled this claim "Intentional Interference with a Contract" they have set forth allegations characterizing what in this jurisdiction is referred to as interference with prospective contractual relations.